IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA      :      CRIMINAL ACTION
                              :
        v.                    :
                              :
FITZGERALD HORTON             :      NO. 12-228


MEMORANDUM

McLaughlin, J.                              July 25, 2013

        The defendant in this case, Fitzgerald Horton, has been
charged with the production, distribution, and possession of
child pornography.  Counts Six through Eleven of the superseding
indictment charge Horton with acts intended to produce images of
sexually explicit conduct involving a minor.  Those counts are
based on photographs of a minor allegedly recovered from Horton's
cellular telephone, which the police seized during a search of
Horton's house.  Horton has moved to suppress those images,
arguing that the plain terms of the warrant did not authorize the
seizure of his cell phone.[1]  Horton also seeks to suppress
certain physical evidence recovered during a subsequent search of
his home as fruits of the first unlawful search.

        The Court held an evidentiary hearing on July 19, 2013,
and will now deny Horton's motion to suppress.

_____

        [1] When asked at oral argument, Horton's counsel made clear
that Horton does not challenge the existence of probable cause to
search for and seize his cell phone or argue that the photographs
should be suppressed if the warrant covered his cell phone.  His
only argument is that seizure of a cell phone located in his home
exceeded the stated scope of the warrant.

The relevant factual background is taken from the applications for the first and second warrants to search Horton's home. On January 5, 2012, Cpl. Robert Erdely of the Pennsylvania State Police Bureau of Criminal Investigation, Computer Crime Division was conducting an undercover investigation of activity on ARES, an Internet-based file sharing program that has been used to share movies containing child pornography. During the investigation, Erdely was able to identify the Internet Protocol ("IP") address of a computer that had shared with other ARES users a file, which Erdely recognized from a previous investigation, that contained images of child pornography. 2/2/12 Warrant App. at 9. An IP address, which is comprised of "four numbers separated by decimal points, is unique to a particular computer during an online session." Id. at 7. Erdely and Lt. David Peifer reviewed the file, a movie, and confirmed that it contained images of two minor girls engaged in sexual acts with an adult male. The officers then traced the IP address of the computer that uploaded this file on ARES to a computer registered to Horton at his home address. Id. at 9.

Peifer applied for and obtained a warrant to search Horton's home. The warrant authorized officers to search for and seize "[a]ll computer hardware, including, but not limited to, any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic,

optical or similar computer impulses or data." It also permitted officers to seize "internal and peripheral storage devices" used to store computer data. 2/2/12 Warrant at 1.

On February 2, 2012, officers searched Horton's home and seized, among other things, his Motorola brand "smart phone." The cell phone had Internet and data storage capabilities.[2] A subsequent forensic examination of the phone revealed sexually explicit photographs of a minor female. After reviewing these photographs, officers applied for and executed a second warrant to search Horton's home. During that search, officers seized what they believed to be the clothing worn by and a blanket partially covering the female depicted in the cell phone photos. 2/11/12 Warrant App. at 2-3.

Horton has moved to suppress both the photos taken from his cell phone and the physical evidence seized during the second search. In arguing that the seizure of his cell phone was impermissible, Horton points out that neither Peifer's application nor the warrant anywhere mentions the term "cell phone" or "smart phone," authorizing instead the seizure of "computer hardware." He also notes that the main focus of the warrant application, and the basis for any probable cause

_____

[2] At the July 19, 2013 evidentiary hearing, the government presented as a witness Special Agent James Zajac of the Federal Bureau of Investigation who was able to confirm the make and technological capabilities of Horton's cell phone.

determination, was his activities on his computer, not his cell phone.

Although the warrant at no point expressly authorizes search of a "cell phone," the Court finds that its language applied to modern Internet-capable mobile devices, such as Horton's Motorola smart phone. The warrant allowed officers to search for and seize "any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical or similar computer impulses or data." This language applies to a smart phone, which is as advanced as many other computing devices. After all, current cell phones, which can connect to the Internet through a web browser, access e-mail accounts, store large amounts of data, and upload images to websites, certainly can "collect," "display," "store," or "transmit" the same "electronic, magnetic, [or] optical . . . data" as a computer.

Other courts have similarly found that the functionality of a modern cell phone is akin to a computer. See, e.g., United States v. Wurie, No. 11-1792, 2013 WL 2129119, at *6 (1st Cir. May 17, 2013) (precedential); United States v. Flores-Lopez, 670 F.3d 803, 805-06 (7th Cir. 2012); United States v. Mathis, No. 12-457, 2013 WL 869511, at *5 (M.D. Fla. Feb. 19, 2013); United States v. Burgard, No. 10-30085, 2011 WL 353520, at *4 (S.D. Ill. Feb. 2, 2011).

The warrant does use the umbrella term "computer hardware" to describe the primary category of items that may be searched for and seized. Horton argues that, even if a smart phone may be described as equipment that can engage in computing functions, it is not considered, in normal parlance, to be or contain "computer" hardware.

The Court is not persuaded that this is necessarily so. Given the functional similarities between a cell phone and a computer, it may be reasonable to refer to a cell phone's circuit board and other internal parts as "computer" hardware.[3] Much more importantly, although the warrant uses the "any equipment" language to list an illustrative example of "computer hardware," that language also provides an internal description of what constitutes "computer hardware." Whatever the commonplace usage of that term, the warrant expressly defines it in a capacious manner and in a way that includes computer-like cell phones.

Furthermore, the rationale justifying the scope of the requested search supports the conclusion that the warrant covered Horton's cell phone. Although the warrant application focused primarily on the need to search Horton's computer, which was used to upload a pornographic movie file, it stated that a computer

---

[3] For instance, in a recent opinion, Judge Posner referred to the chips used in Apple and Motorola smart phones as "computer hardware." Apple, Inc. v. Motorola, Inc., 869 F. Supp. 2d 901, 906 (N.D. Ill. 2012) (Posner, J., sitting by designation).

search, to be comprehensive, must also include a search of other devices.  In his affidavit, Lt. Peifer stated that "searching and seizing information from computers often requires investigators to seize all electronic storage devices" where the inculpatory files accessed from the computer may be permanently stored. 2/2/12 Warrant App. at 6.  Forms of computer storage devices include hard drives, CD-ROMs, flash drives, and other media external to a computer.  See id.

A cell phone, such as Horton's, is similarly capable of storing large amounts of computer data downloaded from the Internet or originally downloaded on and transferred from a computer.  As the Tenth Circuit has observed, "[t]he memory cards, available in some cell phones can, like flash drives, hold vast amounts of information, including image and data files." United States v. Burgess, 576 F.3d 1078, 1090 n.13 (10th Cir. 2009); see also Wurie, 2013 WL 2129119, at *6 (noting that "[t]he storage capacity of today's cell phones is immense").  Thus, the warrant application's reasoning and request applies equally to Horton's cell phone as an external electronic storage device. Indeed, although not the focus of the parties' arguments, the warrant also authorized the seizure of such "peripheral storage devices."

Of course, the warrant could have more clearly articulated that it covered cell phones by separately identifying

them as items to be searched for and seized.  That was the tack taken by the officer seeking a warrant in United States v. Karrer, a non-precedential Third Circuit opinion.  In Karrer, the officer sought a warrant to search "hardware, including, but not limited to, any equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical or similar computer impulses or data," language that mirrors the present warrant, *and* "[a]ny cellular phones[ or] smart phones."  460 F. App'x 157, 159 (3d Cir. 2012) (quotation marks omitted; first alteration in the original).  The fact that the warrant in this case could have been written like the warrant in Karrer, separately listing computer-like "equipment" and cell phones as items to be seized, does not mean, however, that the present warrant failed to authorize the search and seizure of a cell phone.  The language of the warrant used to seize Horton's cell phone, though less clear, sufficiently permitted that seizure.

 For the foregoing reasons, the Court finds that the language of and reasoning underlying the warrant permitted officers to search for and seize Horton's cell phone.  The Court will, therefore, deny Horton's motion to suppress the images recovered from the phone and any fruits of that search.

 An appropriate order shall issue separately.